Page 21-5495 Dependra Tiwari et al. v. Adam Meier et al. Argument not to exceed 15 minutes per side. Mr. Ward, you may proceed for the appellant. Good morning, Your Honors. Good morning. Andrew Ward for the plaintiff appellants. I'd like to reserve three minutes for rebuttal. Yep. May it please the court. The record in this case shows that my clients, entrepreneurs who want to offer a needed service, serving Nepali speakers in their own language, are kept out to protect existing home health agencies. That is how Kentucky's con law operates, by protecting existing agencies from new ones. Now, appellees posit that that protectionism has a side effect of improving cost, quality, and access, but what actually happens, what the record shows is what you see with my clients. A system that removes options and makes care worse because, for example, it treats refugees that only speak Nepali as if they grew up speaking English. It is not rational to believe, or there's at least a material dispute, it is not rational to believe that that is improving home health care for them, or for anyone else in Kentucky. What do we do with the reality that I happen to agree with all of the premise of your argument, that if you care about quality, if you care about competition, lowering prices, better care, having protectionist policies is not good. That just always seems to backfire, so I tend to agree with every one of your premises. But, you know, my understanding of our review of cases for rational basis, particularly when it comes to economics, is that, you know, states are allowed to experiment with things you might call collectivist, socialist, whatever words you want to put. That's particularly true with health care. I mean, health care is so heavily regulated, in some ways is not remotely a competitive market. Aren't they allowed to make those choices, even if I think they're foolish choices? Your Honor, the legislature can make even foolish choices, but it can't make irrational ones. This court recognized that in the Losell case, in the Craig Miles case, where it's… How is it irrational if, you know, most states have had CON laws, the federal government used to require them? Isn't it odd to say something's irrational when roughly half the states still have Certificate of Need laws? Most states do not, Your Honor, have Certificate of Need laws for home health agencies. Well, what's that? Isn't that about 17, 18, or 16 have that? That's correct, Your Honor. OK, so that's a meaningful percentage, right? It is, Your Honor, but it's certainly what we have here in Kentucky specifically, it is not rational. There is undisputed evidence that culturally and linguistically appropriate care is important. That's what our expert says, it's what their expert says, it's… Counsel, let's say I accept your premise that culturally competent care is important, and you want to focus on this specific area, but the government has also put forth, to my mind, a cogent reason, a rational reason for the denial of this particular service. And when you look at the argument that you're making now, these same patients who would be in the home health care business, they also have to utilize other services in Kentucky, hospitals, dental services, all of these things where you don't have a core of cultural competency. So why is this particular area deserving of such different treatment so that we can say that the government's decision is irrational? Well, Your Honor, it's the kind of language, that same language care is what everyone agrees, it's undisputed, it's important, it's what their expert says is ideal. And I mean, it is fantasy. It is not rational to believe that if you have someone working with you, manipulating your body, perhaps in your bedroom, that that care is going to be better if, instead of being able to talk to the person doing that, you're talking for a few minutes to a professional translator. I, if we all understand this, if you were looking for a home health agency for a loved one, perhaps, and at the end of a phone call, they said, by the way, nobody else here speaks English. We all understand that that is not rationally going to lead to more accessible health care or to better care. And we've shown just how restrictive this law is. Yeah, can we, can I come at this, tell me if I'm missing something on this. So your main point is it's arbitrary, this, what they're doing here. How, doesn't state administrative law work the same way federal administrative law works? In other words, when agencies make decisions, so deny, in this case, denying the certificate of need, wouldn't Kentucky law, if you had wished, allowed you to challenge that decision as arbitrary and capricious, in other words, not take down the whole law, but say the way you apply the certificate of need requirement to these individuals, Nepali speaking, with a community that could use some Nepali speaking home health care, isn't there a chance you could have won on state arbitrary and capricious grounds? Frank, honestly, your honor, I'm not sure because it's, it's a, it's not a discretionary decision.  There is a formula under which they are not allowed to open that it does not consider cost. But you didn't try, you didn't try to get arbitrary capricious review for these clients. We, we didn't, your honor. Congress passed 1983 so that people could vindicate their federal rights in federal. But why, I mean, the word arbitrary applies to both, right? Your, your, your main argument, if you had just one word that you wanted to have us in our mind, it would be the word arbitrary. And arbitrary and capricious review is what you get under state laws. What, why shouldn't, if it's so arbitrary for federal purposes, why can't we trust a state agency or at least suggest that it ought to go through a state agency first? Well, certainly there's no exhaustion requirement before, before bringing a section 1983 action. Again, perhaps they could have brought an action in state court. But again, they have a federal right to be free from irrational treatment. Irrational is the one word I think I'd, I'd put forth for your honor. And, and, you know, I'm, I'm not, I still don't understand under a rational basis review why this is an irrational decision where that does not have some kind of rational state interest. You know, they say that too many home health care agencies in the, in the, the jurisdiction would suppress or maybe lead to poor care. You say that it would lead to better care in this instance, but let's say that you don't have a Nepalese focused home health agency and just anybody who, I mean, any people who otherwise qualified could come in and you double the number or whatever. Um, that could lead to people to, to a deterioration perhaps, or a lessening of, uh, the services and the state has an interest I would think in ensuring that that doesn't happen. So I'm, I'm still struggling with why this is a rational from the state standpoint. Your honor, this is a motion for summary judgment at a bare minimum. There is at least a genuine dispute about that. There is a mountain of evidence in the record that it is not plausible to believe. It is not plausible that a formula that doesn't screen for cost or quality or access is going to improve any of those things. Do you want this to go to a jury? Yes, your honor. We'd be happy to prove our claims in a trial. And is that, isn't that an unusual path for a constitutional case to go to a jury to decide, let the jury decide whether it's irrational or arbitrary? At a, we, we, we sought a bench trial, your honor, but, but no, it's not. That's the sort of thing this court affirmed in Craig Miles, finding a law that a restriction there was irrational. It's the sort of thing this court... That was after a bench trial? It was after a trial, your honor. I'm not sure if it was bench or jury, but it was after a trial. And so was the, the Losal case where this court said there was sufficient evidence to find that in ordinance, a particular restriction on, on big box stores, that that was irrational. They said there was sufficient. This court said there was sufficient evidence for the jury. And we've, we've shown just how restrictive this law is because there is a formula that does not consider the things the state says it will improve. A formula that their own expert testified is painting with too broad of a brush, that their expert testified... In these cases, you know, rational basis challenges, how many of them are situations where the market is as heavily regulated, as healthcare? I mean, you may be right that home healthcare doesn't require the same investment than a new hospital. I get it, but it's still healthcare and it's still really heavily regulated. Doesn't that take it outside of the casket business and some of these others? I mean, I don't, not, not on this record, your honor, where there is at least a material dispute about whether any of these justifications are, are even debatable. Most states do not have Kong laws for home health agencies. So there isn't really a case like this one. The most analogous cases is a rational basis challenge to a Kong law in, in Mississippi, which just survived a motion to dismiss because of the sort of allegations that the record has shown are true here. Again, your honors, this is a formula that, that does not speak to the... What's your, what's your best Supreme Court case? I'd say, I'd say Cleburne showing that rational basis review is, is real review. It's not automatic. Yeah, but that, I mean, everyone thinks of that as a case about discriminating, discrimination against the disabled. And the court was unwilling to say intermediate scrutiny because they realized that lots of classifications with respect to the disabled actually helped the disabled. So they didn't want to limit those laws. So city of Cleburne doesn't seem very helpful to me. The Supreme Court also held that this sort of protectionism is illegitimate in ward versus, versus metropolitan life insurance. But I think the real key to this case is it's somewhat unique on, on, on that. It's the record, the record that we have here. What you see is the kind of protectionism that, that happened in Craig Miles. And that's exactly what our experts said you would expect because this law was designed for a problem that doesn't exist anymore in healthcare finance that no one ever... I mean, let me put the question this way. Does the state of Kentucky have the right to take home healthcare or healthcare in general and just say, we're not going to have competition? In other words, we're just not having competition. The government's going to provide the services and that's how it's going to work. Don't they have that option under the U.S. Constitution? Perhaps, Your Honor. I think it's going to depend on the specific... Well, that's protectionist, right? I mean, that's the ultimate. Well, certainly protectionism for its own sake is illegitimate. This court held that in Craig Miles. If it is rationally related to a public benefit, then that could be legitimate. On this record, there is at least a genuine dispute about that. If perhaps that sort of anti-competitive policy might be appropriate for something like hospitals, something that Kong laws were designed for, perhaps. But on this record, there is at least a genuine dispute. And so the court should reverse and remand if they're... You know, just think... Go ahead, Judge Guy. The counsel in almost all of these cases argue that there's a genuine dispute, but I don't understand that it revolves around weighing the evidence. The legislature, if they have... Even if they believe that it does what they say it does, if in fact it doesn't, that's enough to justify the rule that they have. Additionally, I'm a little troubled by... You rely heavily on the basis of this sort of a language group that are going to be underserved or arguably underserved. But the problem I have realistically with that today is that you can be in a community and wake up one morning and you've got suddenly 5,000 people from Afghanistan in your community that you didn't have the night before, or from Columbia or somewhere else. And if we started justifying all of these on the basis of language, there would be no end of it, it seems to me. Two responses, Your Honor. On the first part of your question, it is true that this is a deferential standard. It doesn't involve simply the better read of the evidence, who's right under a preponderance of evidence standard. But there is a standard where enough evidence can show that a law is irrational. That happened in Craig Miles. That happened in Losell. It happened in a dozen other cases in this circuit. I expect my friends will invoke cloverleaf creamery, but the Supreme Court there too said that a law can be irrational if it's not debatable and plaintiffs can use evidence to show that it isn't. There's at least a genuine dispute as to that here. As to your second question, Your Honor, I think it depends. This is a case as applied. We're challenging this as applied to our clients. We think the record shows that this law is irrational as to home health agencies generally, but certainly there is a dispute as to our clients about whether there's a problem and whether this law could rationally be thought to improving care when it says there is no need in Jefferson County, when it hasn't allowed a con application there to be approved in something like 27 years. And there actually is a need for this kind of service. In the next case, there'll be a new set of as applied facts and it'll depend on that record. But on this one, there's at least a genuine dispute. You cannot believe that a law that removes options is going to promote new options. And again, I'll preserve my time if I have any left. No, no, you've got your full rebuttal. Thank you. We'll hear from the other side. Thank you. Morning. Good morning, Your Honors. May it please the Court, David Durr on behalf of the intervening defendant, Apple Lee, the Kentucky Hospital Association. So you're the ones that want to keep him out? Your Honor, we're here today because we believe that CON works. Our clients have seen the evidence. Don't you agree it's very protectionist and, I mean, kind of outrageous the way it works? Well, I think that it is somewhat protectionist, but there is a reason for that and it's not outrageous. Healthcare, as Your Honor pointed out, is much different than any other industry, right? You have people who have insurance. You have the government paying for people. And so, you know, the free market is really premised on free choice. You don't really have that in healthcare because people have to go where they need care, where it's available. Sometimes they're in an emergency situation. They may have the government paying for them so they don't really care about price. They may have a third party paying for them, a third party insurance company, so they don't really... If it was rural Kentucky where you really need to make... You had to make sure the services were there. There was a hospital within 30 miles. There were home health care. That would really make a lot of sense. I don't understand it in Louisville. That just doesn't make any sense to me at all. It really does seem arbitrary and capricious and irrational. Well, there's nine home health agencies in Louisville. They're well served. And if you take the appellant's argument, they would have a home health agency for every language that's spoken in Louisville. There's a lot of languages there. What's wrong with that? If there's no need, they'll collapse. The free market takes care of itself pretty well. And if there is a need, these people will have folks there. Well, there's trade-offs to that approach, Your Honor. If you fractionalize the market, then there's not the volume that you need to support special programs for individuals. We've had testimony in the record from somebody who operates a home health agency in Louisville. And he says, we use our volume to create special programs, for example, COPD. If you have a home health agency for every language that's spoken, and they have a couple COPD patients, it doesn't make sense to have a special program for COPD. If you have a couple patients that need... Well, that home health care agency doesn't offer that service. So be it. And the legislature has valued the benefits of volume over other benefits that you've identified. I think it's really a question of who decides. And in this case, the courts have always said, it's the legislature that makes that decision. But what would have happened had they challenged this denial, just as applied to them, and said it was arbitrary and capricious? Would they have been able to go from the agency to state court? Yes, Your Honor. They have an appeal right to the Franklin Circuit Court. And that would then be arbitrary and capricious review? They could make a constitutional declaratory judgment action. But couldn't they also win under state administrative law the way... And federal administrative law, if the actual decision is arbitrary and capricious, you can undo it. Wouldn't you be able to do the same thing under Kentucky law? Yes, under Kentucky law, the decision of the hearing officer has to have a basis in the record. It can't just be arbitrary. So they could make that challenge, Your Honor. I don't know. That doesn't sound like a terrible way to resolve this case because it looks arbitrary to me. Well, they never made an effort. And I would say that, you know, obviously we disagree about it being arbitrary. And again, I think it's a matter of trade-offs. The court below identified three reasons, three plausible reasons for this law, and found that the legislature could have rationally believed that the CON law would further these three reasons. And that was... I'm sorry, finish your sentence. Cost efficiency, access, and quality. So in this case, as I understand it, the formula was applied in this case. And based on the application of the formula, it was found that this health care service was outside of that and not needed. So the plaintiffs claim that the certificate of need laws are irrational because they do not apply to similarly situated health care providers. And they're saying that there's a special need for this. But in this instance, how do you respond to their arguments that this is, one, irrational, and two, that it is arbitrary and that the competency element is sufficient to really justify and sort of obviate this allegation that it's not needed, that they should be treated with a special carve-out, if you will. He didn't say carve-out, but that's my word. And I just want to make sure I understand the question, Your Honor. So you're asking why they shouldn't have a special exception for a Nepalese agency? Well, yes, because that's his argument that there should be that. And the second part is, why, since the formula was applied, is that the reason you say this is not arbitrary, I mean, this is not irrational because they were actually applying the formula? Yes, Your Honor. To the first part of your question, why there shouldn't be a special exception to allow these foreign language agencies, again, I think it's a weighing of values here. And that has always been left to the legislature. So if, again, if you allow multiple agencies to come into existence because of language, then they're going to be taking volume. And when you do that, the existing agencies are not going to be able to offer the special programs that they offer. They can't invest in, for example, remote patient monitoring. But how can this legitimate need that the Tawaris have articulated, how is that met in the grand scheme of things where there are no Nepalese-speaking people in the home health agency or the facility? Well, I'd like to point out a couple of things. Number one, federal law already requires that these health care providers provide language services. So for example, one agency does in Louisville, and this is in the record, is that they have video-based translation services. So if they have a Nepalese-speaking patient, and they do have some, they have a tablet and they call into an agency that provides a Nepalese-speaking interpreter. And that person and the nurse, if the nurse doesn't speak the language, it's kind of like this, where we have somebody by Zoom. And so they interpret for them during the visit. And they haven't had any complaints about that. And then secondly, I'll just point out that they've never identified anybody, Nepalese or otherwise, who has been unable to find home health services in Kentucky. That's nowhere in the record. We asked them to identify that, and they couldn't do it. So these patients are being served, and they appear to be being served well. What do I do with this prediction, which who knows if I'm right, but it's my prediction. These certificate of need laws are being shown more and more to be quite foolish in general. Congress got rid of them. More and more states are getting rid of them. They're getting paused during the pandemic when healthcare stuff really matters. No one seems to have faith in these things. And I suspect that story is going to be even more quick when it comes to certificate of need in home healthcare, where it just seems least justifiable. So you've got this arc where everybody has them, starting in the 70s and 80s, and it just keeps going down and down and down. Does it become constitutionally irrational at some point or never? When can you finally wake up and say, I realize the legislatures were supposed to ask, could a legislator plausibly think this would work? When in the course of that history is a judge allowed to say it ain't plausible anymore? Well, the Supreme Court said in the Vance case, Your Honor, that we leave that to the democratic process. So never. I believe so, Your Honor. We can say it when there's not one left. Yeah. But that's very powerful. We believe in the democratic process. And if people truly believe it was a wrong policy choice, then we leave it to the legislature to fix that. Well, that didn't happen in the casket case, Craig Miles. Well, again, I think the circumstances were different there. We're talking about a different market, as you've identified. So healthcare, as I've explained, is a different market. And then in that case, we weren't talking about empirical evidence that the law didn't work or it wasn't effective. The court below described it as the factual circumstances underlying the law. So there was no rational relationship between health and safety, which were the pro-offered legitimate reasons that the government gave for the law and the requirement that only funeral directors could sell caskets. Because funeral directors didn't have any special training in health and safety. And you didn't even have to be buried in a casket. You could be buried in a cardboard box under Tennessee law. And so the court said, this is really a solution in search of a problem. It wasn't a question of, well, we've done some empirical studies from these academics in the ivory tower, and they say it doesn't work. That's not the case in that case. So it's very different from this case, Your Honor. Well, I hope it doesn't end up as the Moore Certificate of Need laws and requirements you have in a state, the more need you have caskets. Well, Your Honor, we've put a lot of evidence in the record that shows, I think, that CON appears to be working in Kentucky. But I see my time is at the end. All right. Yeah. We'll hear from your co-counsel or co-party. Good morning, Your Honors. David Lovely here on behalf of Appalese, Secretary Eric Friedlander and Inspector General Adam Mather. What's the position of the Attorney General on this case? See, the Attorney General of Kentucky's the top legal official in the state of Kentucky, right? That's correct, Your Honor. Has his opinion been sought about this case and this law? His opinion has not been sought, Your Honor. Wouldn't it be appropriate to get his opinion? It's not within the framework. The current statutory framework, 216B, does not require the Attorney General to enter an appearance on behalf of the Commonwealth in this matter. I thought that the norm in the federal courts, in fact, there's an appellate rule on this, but the norm in the federal courts is when the constitutionality of a law is challenged, we invite the Attorney General of the state to take a position on it. Certainly, Your Honor. The Attorney General could have certainly entered an appearance. Does he know about the case? Does his office know about the case? I am unaware whether they know or not, Your Honor. I did not serve them personally with a copy. I'm not sure whether appellants did or not, but the appellant sued the Secretary of the Cabinet and the Inspector General of the Cabinet. The Cabinet is the executive agency that administers the certificate of need, the KRS-216B laws, Your Honor. It just seems conspicuous that he's not here. Certainly, certainly. And again, appellants could have, as you alluded to, the appellants could have taken a couple of different processes. They could have taken this to Franklin Circuit Court as well. They could have filed suit and served the Attorney General and named him in name. And you agree with your co-counsel that they, you know, in a future certificate of need denial, even by these parties, so they apply for next year, it's denied. They could get arbitrary and capricious review. They could appeal to the agency and then they could go to state court challenging on arbitrary and capricious grounds under state law. That's correct, Your Honor. They could do that to frame it, and it's right within the statute, Your Honor, and it is an appeal to Franklin Circuit Court. So you still think these things are a good idea? I do, Your Honor. I think they've met the legislature's stated purposes in CARES 216B, providing quality access and cost efficiency, Your Honor. I agree with the district court below, recognize those plausible rationale. And I think in a state... How do you have lower costs with fewer participants in the market? I've just never heard of that phenomenon. I think it's a cost efficiency, Your Honor. I think it's two separate things. So efficient, high costs. Well, Your Honor, with cost efficiencies, economies of scale are created with a sufficient patient base, which allows these... But doesn't Kentucky care first and foremost about quality and lower costs? Is that what the people of Kentucky want? When you say cost efficiency, you're saying higher costs, and we're using the word efficiency to confuse them that that's what we want to have happen here. It just seems so amusing to me. Just admit, don't you... Don't they want lower costs? Well, I think, Your Honor, I think it's difficult when you're dealing with a population that has a high Medicaid population. And when you have quality... You're balancing quality, cost efficiency and cost of care. And it's very... That all goes into the... Those are all factors that go into it. You may want lower costs, but you also want good quality. We have an affidavit from an operator of a home health agency... Just admit it then. Don't say cost efficiency. Say it'll be higher cost, but we think better quality of care. That's the trade-off. Higher cost for better quality. I wouldn't say it's a trade-off, Your Honor. I think it's a balance. I think it's a balance of all those factors going into it. And then the legislature put that in statute, saying that we want all three of these, not just one. We're not valuing just lower costs. If they wanted to value... The elected officials of Kentucky are proud of this. They're willing to let the people of the state know, of the Commonwealth know, they want higher costs because they think it'll be better quality. They're willing to go out and say that publicly as opposed to squirrely words like cost efficiency. I think that the legislature put forth exactly what they wanted to achieve with these CON laws. And as they apply to the home health agencies, they put it in the statute, quality, cost efficiency, and access, Your Honor. Well, I'd feel much better about it if they were honest about it and would get up there and say this leads to higher costs. And the trade-off is we think the quality will be better because that's clearly what they do. I don't know whether the quality is better. That's so hard to assess. But I just don't know how you can't just be straight up about it. Of course it leads to higher costs when you close people out of a competitive market. Sure. I think that to answer your question, that in a state like Kentucky, we have unique needs as far as health care goes. Of course, we have Louisville, we have Lexington, we have Northern Kentucky that are large urban centers. But we also have a very rural state and access is very important as far as that goes. So again, with those three factors all playing off of one another, you have to look at the access to these rural areas where a home health agency or a hospital system or whatever in the certificate of need. That would be a really compelling argument if this was an application to super rural Kentucky. This is Louisville. I just don't understand it in Louisville. My response to that would be that the legislature has to draw lines in beach communication. That's something that the legislature does. And they might be imperfect lines, but that's not inappropriate. The court, again, is not an appropriate area for the appellants to address that. They're free to address that in the public comment period that we have for the state health plan, annual, biannually, or a secret address from the legislature. Change the law. Is there anything, by the way, in the record that would support the idea that the way the CON laws work with respect to home health care, is that actually lowers costs? Is there anything in the record that says it lowers costs? I think that it lowers costs efficiency, your honor. Creates cost efficiency. Stick with the lower costs. Is there anything that says lack of competition lowers costs? Well, cost is a difficult thing, your honor, in the realm of health care. We have, again, a state where we have a very high Medicaid population so a lot of these costs are set. They're set, they're predetermined. The state tells these agencies what they're going to pay. If they're set, that means there must be nothing in the record that shows decreasing competition lowers costs. Again, your honor, I think that cost efficiency is what the legislature pointed out that they, that was the rational basis for them putting forth the CON laws rather than lowering costs. Well, I just don't want to have us say anything in an opinion about there's nothing in the record that shows decreasing competition leads to lower costs if there actually is something in the record that contradicts it and I've given you that chance three or four times and you've not pointed to anything so I just want to make sure I'm right about it. Judge Guy, do you have any questions?  All right, I think we're ready for rebuttal. Thank you. Thank you so much, your honor. Go ahead. Thank you, your honors. Just, just two quick points. One, we have not talked about whether they could have sued in Kentucky. We'd certainly like to be able to brief that if that's important to the court. I don't know that if you automatically under the, fail under the formula as my clients do, that you'd be able to build the kind of record and take it to appeal that we have here to show just how arbitrary it is this law is. My friends also have invoked how health care is different and of course, health care is different in many ways, but what's... If you're at the state level, it's what you're wanting to show that this is irrational or are you wanting to show that there is a special defined need for what you want to provide? Well, my clients... This is a constitutional challenge here, but yes, go ahead. They can't show a need at the state level because they're kept out at the first step by a formula that does not consider need. My friends have mentioned that health care is different, but they are not identifying anything that is unique to health care or certainly not unique to home health agencies. Bigger is better theories exist everywhere. And there's just nothing different here that they've identified. Ultimately, Your Honor, this law is outrageous. My friends are telling you that this law might have this secondary or tertiary effect of leading to specialized services when what it is actually doing is blocking a needed specialized service. And that can't possibly be rational. Ultimately, my clients are not sanguine about their chances in the legislature for the reasons that our expert explained, that these laws do get taken over by the existing agencies. There's been evidence of that for a long time. They will do what they do in the con process. Did you ask the views of this Attorney General? It's very strange that that was not something that happened at some point in this case. I would have thought the Attorney General of Kentucky would be quite open-minded about this claim. I can't speak, Your Honor, to why the Attorney General decided not to be involved in this. Did you serve him with the complaint? I'm not 100% sure. I believe we did. Certainly, that would be in the record. I believe that we did. So he served and then he doesn't participate in the district court? Again, Your Honor, I certainly can't speak to his choices. But ultimately, Your Honors, this law is outrageous. It is a process that's taken over by the incumbents. My clients couldn't even get a lawyer for the certificate of need process because everyone they contacted already represented the hospitals. There is overwhelming evidence in the record, and that is far more than the mere scintilla that survived summary judgment. This is just a summary judgment motion. We've absolutely raised a genuine dispute. There's overwhelming evidence that these laws don't lower costs in the record, and they certainly don't lower it when you add in a professional translator instead of just being able to talk to the person that you're working with. For all those reasons, we'd ask the court to reverse. Okay. Thanks to both of you. A really interesting case. We appreciate your helpful briefs and thanks, as always, for answering our questions. We're grateful. The case will be submitted and the clerk may call this next case.